# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

NATHANIEL DUMAS,                              )     CASE NO. 4:16-cv-1871
                                             )
     Petitioner,                           )     JUDGE JAMES G. CARR
                                             )
        v.                                )     MAGISTRATE JUDGE DAVID A. RUIZ
                                             )
HAROLD HOOKS, Warden,                         )
                                             )     **REPORT AND RECOMMENDATION**
     Respondent.                           )

Petitioner, Nathaniel Dumas (hereinafter "Petitioner" or "Dumas"), challenges the constitutionality of his conviction in the case of *State v. Dumas*, Mahoning County Court of Common Pleas Case No. 2011-CR-429. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 25, 2016. (R. 1). Dumas was permitted to amend his petition twice.[1] (R. 11, 15, 22 and 27). On April 13, 2017, Warden Mark Hooks ("Respondent") filed his Answer/Return of Writ. (R. 30). Petitioner filed a Traverse on May 12, 2017, (R. 35), to which Respondent did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is

---

[1] Several motions for a stay and a third attempt to amend the petition were denied. (R. 10, 15, 22, 27, 36, 38, 44).

recommended that the habeas petition be DISMISSED as procedurally defaulted.

## I.   Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Seventh District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

> {¶ 2} On April 8, 2011, Appellant and his cousin, Warren Wright drove to James Thomas' house in Youngstown, Ohio, to discuss robbing the Galaxy Seafood store ("Galaxy"). Appellant and Wright offered Thomas $20–30 to press the doorbell buzzer at Galaxy so that someone would unlock the front door and let them in. Once the door was opened, Wright would commit an armed robbery. Pursuant to this plan, the three men left for Galaxy in Wright's tan Cadillac. Appellant was driving. They stopped at a sporting goods store so that Wright could steal a ski mask and glasses to wear during the robbery. They also bought and drank beer at a drive-through on Belmont Avenue. As they drove, Appellant and Wright further discussed their plans for the robbery.

> {¶ 3} Appellant dropped off Thomas and Wright a few blocks away from Galaxy. At the same time, Lusonyta Madison arrived at Galaxy to visit her daughter, C.L., age 15, who worked there. Before entering, she saw Wright and Thomas walking towards the building.

> {¶ 4} Mike Walker, a Youngstown Police Officer, was hired by Galaxy's owner as a security guard and was working on the night of the crime in full uniform, including his service weapon.

> {¶ 5} Thomas and Wright entered the store sometime around 6:00 p.m. Thomas was ready to press the door buzzer, but a patron exited the store at that moment, letting them in. Thomas entered first. Wright, walking behind with the ski mask on, pushed Thomas out of the way and pointed his weapon at the store clerk, C.L. He approached the register and said, "give me the money, give me the money." (Tr. Vol.III, p. 501.) Walker was in the store and observed the robbery as it was unfolding. He yelled, "police, drop the gun," and drew his weapon. (Tr. Vol.III, p. 561.) When Wright did not comply, Walker fired three rounds, hitting Wright twice in the chest. Wright collapsed. Walker then secured the weapon and called

2

for backup support.

{¶ 6} Youngstown Detective/Sergeant Daryl Martin responded to Walker's call. He spoke to Ms. Madison. Ms. Madison told him about Thomas' part in the crime. She also said she recognized the masked gunman as "Shelly's brother." (Tr. Vol. III, p. 497.) "Shelly" is a reference to Delshella Lynch, Wright's sister and Appellant's first cousin. Ms. Madison called Ms. Lynch after the robbery to tell her that her brother had been shot. Wright's tan Cadillac was found parked about three blocks from Galaxy. *2

{¶ 7} Thomas initially denied involvement with the crime. He later told police about not only his own involvement, but Appellant's, as well.

{¶ 8} On April 15, 2011, Appellant was arrested. Following his arrest, he claimed that he was with a man named Rodney Clay on the evening of the robbery. Detective Martin spoke with Clay, but Clay was unable to confirm Appellant's story or provide him with an alibi.

{¶ 9} Trial began on January 24, 2012. Immediately prior to *voir dire*, the court had scheduled time to resolve pretrial motions Appellant had filed pro se. During the proceedings, Appellant constantly interrupted his counsel, the prosecutor and the judge while the motions were being discussed. During the initial stage of *voir dire*, Appellant interrupted and accused the judge of being biased in favor of the prosecutor. When *voir dire* was well under way, Appellant again interrupted the proceedings and objected to the manner in which the prosecutor was asking questions. He stated: "I'm not going to trial with that jury". (Tr. Vol. I, p. 186.) After another series of interruptions, he said he wanted to hire his own attorney and repeated that he was not going to trial. At this point, defense counsel told the court that Appellant no longer wanted his representation.

{¶ 10} Appellant became even more unruly. He attempted to issue orders to the judge, made various pronouncements about what he was and was not going to do in court, and told the judge "I don't fear you." (Tr. Vol. I, p. 190.) Appellant's mother, who was in the courtroom, attempted to explain Appellant's behavior, but Appellant interrupted her as well, and tried to instruct the court as to the manner in which the judge could talk to his mother. Appellant referred to the proceedings as a conspiracy against him. He interrupted the prosecutor as she attempted to respond to his accusations. When he again stated that he was not going to trial, the judge asked him how long it would take to hire a new lawyer. He said it would not take him very long. The judge offered him 24 hours to find a lawyer. Appellant protested that he could not possibly find another attorney in 24 hours and stated that he would not go to trial with the present jury. Appellant's tirade included his statement that he did not need to know the law to know the jury was prejudiced against him. After the final outburst, the court told Appellant that he could proceed with a new attorney within 24 hours, or be taken to the third floor

3

of the courthouse to observe the trial by video and his present counsel would continue with the case. Appellant then asked for new counsel to be appointed, which request was denied, and the trial was continued to the next day.

{¶ 11} When trial reconvened, Appellant had not hired new counsel. Appellant railed against the judge for only giving him 24 hours to find counsel, and he refused to participate in the trial. He complained about the discovery process, alleged violations of his constitutional rights, lack of preparation for trial, and continued insisting that he was not going to allow the court to convene a trial. The court asked Appellant if he was finished with his interruption, and Appellant answered, "I'm done." (Tr. Vol. I, p. 204.) At this point, the judge continued the trial to the next day in order to proceed with *voir dire*. Appellant interrupted again, stating "[t]hat's not going to happen neither. I told y'all, I'm not about to let y'all do what you think y'all going to do with me." (Tr. Vol. I, p. 205.)

{¶ 12} The next morning the case reconvened, and defense counsel objected when the court ordered that Appellant be removed to another room to view the trial. The prosecutor pointed out that Crim .R. 43(B) allows the court to remove a defendant for disruptive behavior, and that Appellant had a history of disruptive behavior not only in this case but in a prior case in Youngstown Municipal Court. Appellant had also written a letter to Detective Martin in which he threatened that "there will be a commotion in this honorable court" if forced to go to trial with his current defense counsel. (Tr. Vol. I, p. 218.) The court gave Appellant a final chance to address the issues regarding his behavior in court. Instead, Appellant seized the opportunity to begin a rambling diatribe where he expressed that he wanted a suppression hearing held, and insisted that he had a right to new counsel of his choice. He claimed there had been a *Brady* violation in his case, that Thomas should have been charged with murder, that he was never given a bill of particulars, and generally that his due process rights had been violated. He demanded that the prosecutor give him a statement of what Thomas' testimony would be in court. This rambling statement continued for a considerable period of time.

{¶ 13} The court then ordered Appellant to be removed to another room where he was able to view the trial on television monitors. The court assured Appellant he would have access to his counsel and would be able to see and hear everything that was going on in court, and they would also be able to see him. The judge determined there was nothing in Appellant's demeanor that would cause him to change his mind about removing Appellant from the courtroom. Prior to his actual removal, while the judge dealt with another pending motion, Appellant interrupted and said "I want to apologize for my past actions in this courtroom." (Tr. Vol. II, p. 246.) At the conclusion of the motions hearing Appellant was removed. *Voir dire* was completed.

{¶ 14} The state called as witnesses Kevin Shaw who owned Galaxy, Officer

4

Walker, Lusonyta Madison, her daughter C.L., James Thomas, various police officers, and a deputy coroner. The state also called Delshella Lynch, who testified about a lengthy conversation she had with Appellant in which he confessed to his involvement with the crime. She confirmed that Wright was her brother, and Appellant is her first cousin. (Tr. Vol. III, pp. 598–599.) Ms. Lynch managed a hair salon where Madison and C.L. were customers. She stated that Appellant and Wright were very close, like brothers, and spent nearly every day together. Wright came to her salon in his tan Cadillac at about 1 p.m. on the day of the crime. At about 6 p.m., she received a call from Madison that Wright had been involved in a robbery and shooting at Galaxy. She immediately drove there and discovered that Wright had been shot. She followed the ambulance to the hospital, and many of her relatives were there when she arrived. Ms. Lynch testified that the only relative who did not appear at the hospital was Appellant. (Tr. Vol. III, p. 608.)

{¶ 15} Ms. Lynch testified that two days later she was staying at her mother's house. Appellant arrived, and she asked him what had happened at Galaxy. They went outside to talk privately and Appellant confessed his involvement. (Tr. Vol. III, p. 612.) Appellant said that Wright picked him up in his car and they drove to a store to steal a ski mask and glasses. They got back in the car and talked about doing a robbery. (Tr. Vol. III, p. 613.) Wright devised a plan to find someone to press the door buzzer to get them into Galaxy. They asked two people who said no before asking Thomas, who said he would do it for $20. The three returned to the car and finished their plans while driving to Galaxy. Appellant was standing outside in back of the store when the robbery occurred. When he heard shots, he jumped into Wright's car and drove away. He left the car nearby at his aunt Carolyn's house. Appellant told her Ms. Lynch could get the keys from Tahesia Dumas, another cousin, and she later retrieved the keys and car from the place Appellant had indicated.

{¶ 16} On February 1, 2012, a jury convicted Appellant of felony murder in violation of R.C. 2903.02(B)(D), with an accompanying firearm specification, in violation of R.C. 2941.145(A). He was sentenced to fifteen years to life in prison. He was also convicted of aggravated robbery, in violation of R.C. 2911.011(A)(1)(C), a felony of the first degree, with an accompanying firearm specification, in violation of R.C. 2941.145(A). His sentence for aggravated robbery was ten years in prison. The two firearms specifications were merged at sentencing and a three-year prison term was imposed. The punishments were ordered to run consecutively, for a total of twenty-eight years to life in prison. This timely appeal followed.

*State v. Dumas*, 2015 WL 3999181, 2015-Ohio-2683 at ¶¶ 2-16 (Ohio Ct. App. Jun. 29, 2015).

## II. Procedural History

### A.    Conviction

On April 21, 2011, a Mahoning County Grand Jury charged Petitioner with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(B), one count of murder in violation of O.R.C. § 2903.02(B), and one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1). (R. 30-1, PageID# 750-751, Exh. 1). All three counts carried firearm specifications. *Id.*

Petitioner plead not guilty. (R. 30-1, PageID# 753, Exh. 2). On August 25, 2011, Petitioner's motion to dismiss the indictment was denied. (R. 30-1, PageID# 755-785, Exhs. 4-6). Petitioner filed numerous other *pro se* motions. (R. 30-1, Exhs. 8, 12, 13, 14, 16). On November 15, 2011, Petitioner was expressly cautioned that his numerous filings effectively toll Ohio's statutory speedy trial limitations. (R. 301, PageID# 794, Exh. 11).

On January 24, 2012, the State moved to dismiss the charge in Count One, aggravated murder, which the trial court granted. (R. 30-1, PageID# 803-804, Exh. 15). After numerous disruptive outbursts by Petitioner, the trial court ordered that Dumas "be removed to a smaller courtroom on the third floor of this Courthouse and attend his trial by virtue of video communications between Courtroom No. 1 on the second floor and the smaller Courtroom on the third floor."[2] *Id*.

On February 2, 2012, a jury found Petitioner guilty of both remaining counts as well as the firearm specifications. (R. 30-1, PageID# 812, Exh. 18). On February 6, 2012, Petitioner was

_____

2 Examples of petitioner's disruptive conduct were cited in the state appellate court's opinion and can be found in the record. (R. 30-3, PageID# 1606-1615, 1613-1614, 1625, 1638; Tr. 186-190, 193-195, 205, 218

sentenced to fifteen years to life imprisonment for the murder conviction and to ten years for aggravated robbery. (R. 30-1, PageID# 823-824, Exh. 21). The sentences were ordered to be served consecutively, and the three-year sentences on the firearm specifications were merged for sentencing, resulting in an aggregate term of 28 years to life in prison. *Id*.

On March 8, 2012, the trial court denied Petitioner's motions for a new trial. (R. 30-1, PageID# 833, Exh. 24).

**B.  Direct Appeal**

On February 8, 2012, Petitioner, through counsel, filed a Notice of Appeal with the state appellate court. (R. 30-1, PageID# 834, Exh. 25). On August 14, 2012, Petitioner, represented by new counsel, raised the following assignments of error:

1.  The trial court committed constitutional error when it excluded appellant Dumas from his trial in violation of the confrontation clause of the Sixth Amendment to the United States Constitution.

2.  The trial court committed plain error and violated R.C. 2941.25 (multiple counts statute) and the double jeopardy clause of the Fifth Amendment to the United States Constitution when it sentenced appellant Dumas to multiple terms on aggravated robbery and murder as they are allied offenses of similar import.

3.  Trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution when he failed to present available evidence establishing that appellant Dumas was not at the crime scene.

(R. 30-1, PageID# 835-865, Exh. 26).

On May 31, 2013, in response to Petitioner's motion for new appellate counsel, the state appellate court denied that motion, but granted Petitioner time to file his own written brief raising additional claims of error. (R. 30-1, PageID# 924-925, Exh. 30). On June 28, 2013, Petitioner filed a *pro se* supplemental brief raising three additional assignments of error:

1.  The trial court committed reversible error when it failed to bring appellant to trial within (90) days after arrest, pursuant to Ohio Revised Code 2945.71(c)(2) and (D) -- in violation of his Fifth, Sixth and Fourteenth Amendment rights to the U.S. Constitution, and Ohio Constitution Article I, 1 and O.R.C. 2945.71, 72 ,73.

2.  There was not sufficient evidence to justify a conviction on Count One (murder), Count Two (aggravated burglary), with a firearm specification. Trial counsel's Rule 29 motion should have been granted, due to a lack of evidence to place appellant at the scene.

3.  Both, trial counsel Mark Carfolo and appellant counsel J. Dean Carro provided ineffective assistance of counsel when they failed to raise the issue of appellant's speedy-trial violations in violation of the Sixth Amendment to the U.S. Constitution.

(R. 30-1, PageID# 926-999, Exh. 31).

On June 29, 2015, the state appellate court considered all assignments of error and affirmed the judgment of the trial court. (R. 30-1, PageID# 1043-1065, Exh. 36). On July 13, 2015, Petitioner, *pro se*, filed an application for reconsideration arguing the court erroneously found that there was no speedy trial motion prior to trial. (R. 30-1, PageID# 1066-1070, Exh. 37). On August 12, 2015, the state appellate court denied Petitioner's motion for reconsideration, finding again that Petitioner did not file a motion to dismiss on speedy trial grounds with the trial court, and thus, no error in the decision. (R. 30-1, PageID# 1082, Exh. 40).

On September 10, 2015, Dumas, *pro se*, filed a notice of appeal and motion for leave to file delayed appeal with the Ohio Supreme Court. (R. 30-1, PageID# 1083-1112, Exhs. 41 & 42).

On October 28, 2015, the Ohio Supreme Court denied the motion for a delayed appeal and dismissed the case. (R. 30-1, PageID# 1113, Exh. 43)

**C.   Application to Reopen Appeal**

On September 15, 2015, Dumas, *pro se*, filed an application to reopen his direct appeal in pursuant to Ohio App. R. 26(B) raising nine assignments of error:

1. The trial court abused its discretion by forcing appellant to go to trial without timely requested Bill of Particulars and due process material that the judge "court ordered" the state and trial counsel to give to appellant, months prior to trial; in violation of 14th Amend. Due Process right.

2. The trial court abused its discretion when it failed to hold both counsels in contempt for failing to comply with a court order; in violation of 14th Amend. Equal Protection of Laws.

3. The trial court abused its discretion by forcing appellant to go to trial with counsel who repeatedly stated he was unprepared, and at a disadvantage, which was the domino effect from the 1st and 2nd assignment of error, which resulted in a violation of 6th Amendment right to effec. counsel.

4. The trial court abused its discretion by forcing appellant to go to trial without *Brady* material that the same court had "court ordered" to be given to appellant; in violation of 14th Amendment Due Process and Equal Protection right.

5. Trial court abused its discretion when only gave 24 hrs. for appellant to hire counsel of choice, when there was obvious conflict, and appellant forced to trial with counsel; in violation of 14th Amend. Due Process & 6th Amend. right to a fair trial and the effective assistance of counsel.

6. Appellate counsel was ineffective when he failed to raise issue of conflict of interest and the State's failure to provide *Brady* material; violation of 6th Amend. to counsel.

7. Trial counsel was ineffective when he failed to investigate possible defenses; in violation of 6th Amend. effec. counsel.

8. Trial court abused its discretion when it allowed state to approach witnesses' and guide testimony; violation of Due Process.

9. Cumulative effect of all errors violated due process guarantee of fundamental fairness; in violation of 14th Amend. Due Process and 6th Amend. right to fair trial.

(R. 30-1, PageID# 1114-1125, Exh. 44).

On June 29, 2016, the state appellate court overruled Dumas's application to reopen. (R. 30-1, PageID# 1141-1147, Exh. 47).

Dumas did not appeal the denial of his 26(B) application to the Ohio Supreme Court.

### D.    Postconviction Relief

While his direct appeal was pending, on September 2, 2014, Dumas moved to dismiss the indictment, which the trial court construed as an untimely petition for post-conviction relief and dismissed without issuing any findings of fact or conclusions of law. (R. 30-1, PageID# 1148-1149, Exh. 48). Dumas did not appeal this judgment entry.

On May 22, 2015, Dumas, *pro se*, filed a second post-conviction petition seeking leave to file it in a delayed manner pursuant to O.R.C. 2953.23(A)(1)(a). (R. 30-1, PageID# 1150-1183, Exh. 49). On June 5, 2015, the trial court denied leave to appeal and dismissed the petition, finding Dumas failed to "satisfy R.C. 2953.23(A)(l) in explaining why this Court should excuse [his] delay." (R. 30-1, PageID# 1197-1198, Exh. 51).

On June 22, 2015, Dumas appealed the latter decision, raising four assignments of error:

1.    Detective Daryl Martin violated appellant's Fourteenth Amendment substantial and procedural due process and equal protection right when he coached, tutored, and coerced Thomas statements on video dated 4-14-11.

2.    The State of Ohio's prosecutorial misconduct violated appellant's Fourteenth Amendment procedural due process and equal protection rights, and Sixth Amendment to a fair trial when the State of Ohio: 1) Breached its contract with the state's witness; 2) Withheld impeachment material and Brady material from appellant; 3) Knowingly committed perjury under oath; and 4) Knowingly and deliberately suborned perjury under tampered with a witness.

3.    Trial counsel violated appellant's Sixth Amendment right to effective assistance of counsel when he: 1) Allowed appellant to go to trial unprepared; 2) Had knowingly allowed for Thomas and the State of Ohio's perjury to stand uncorrected; and 3) Withheld exculpatory and impeachment video and photo array evidence favorable to appellant from the trial.

4.    There was insufficient evidence to justify a conviction on Count One Murder, Count Two Aggravated robbery, and firearm specifications ran concurrent; in violation of Fourteenth Amendment due process right.

(R. 30-1, PageID# 1199-1226, Exhs. 53 & 54). On February 24, 2017, the state appellate court

found Dumas's "petition was untimely filed and he has failed to demonstrate that his

untimeliness is excused pursuant to R.C. 2953.23(A)(1)(a)-(b)," and affirmed the trial court's

denial of the petition. (R. 30-2, PageID# 1298-1306, Exh. 56).

On April 6, 2017, Petitioner filed an appeal with the Supreme Court of Ohio. (Case No.

2017-0467). On the same date, Petitioner raised the following propositions of law:

> Proposition of Law No. (1): Wouldn't it be a conspiracy against rights for trial
> counsel and another prosecutor to sit-mute while the prosecutor assisted a witness
> to falsely testify and twist facts? 18 U.S.C. 241
>
> Proposition of Law No. (2): Wouldn't it be a deprivation of rights under color of
> law for officials to conspire against Appellant's rights? 18 U.S,C. 242
>
> Proposition of Law No. (3): Wouldn't these unlawful acts be considered
> Obstruction of justice? 18 U.S.C. 1503
>
> Proposition of Law No. (4): Wouldn't it be perjury for Ms. Doherty to lie and tell
> the court that there wasn't any new statements from their witness and to assistance
> him in his perjury on stand? 18 U.S.C. 1621
>
> Proposition of Law No. (5): Wouldn't it be a crime of subornation of perjury for a
> prosecutor to knowingly assist a witness to lie on stand?
>
> Proposition of Law No. (6): Isn't it a crime of tampering with a witness when (1)
> a police officer literally places words in a witness' mouth during an interrogation
> and (2) when a prosecutor prepare a witness to take the stand and testify falsely
> and twist facts? 18. U.S.C. 1512
>
> Proposition of Law No. (7): Aren't the unlawful acts described here considered
> corrupt activity? O.R.C. 2923.01
>
> Proposition of Law No. (8): Isn't Ms. Doherty guilty of *State Durierv* as well?
>
> Proposition of Law No. (9): Didn't the prosecutor violated *Brady* when she had
> denied Appellant's request for Thomas' proffer statement all because she had
> known that Thomas was going to falsely testify? *Brady v. Maryland*
>
> Proposition of Law No. (10): Didn't trial counsel violate *Brady* when he had (1)
> withheld and concealed Thomas' video statements from the jury that would have

demonstrated that he was falsely testifying on stand and twisting facts? (2) withheld the videos from the jury of the key eyewitness describing a suspect who did not match Appellant's description, height, nor weight? And (3) withheld the photo array containing Appellant's photo from the jury? *Brady v. Maryland*

(Case No. 2017-0467). On July 5, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4). *State v. Dumas*, 2017-Ohio-5699, 149 Ohio St. 3d 1466, 77 N.E.3d 989 (Ohio 2017).

Meanwhile, on June 10, 2015, Dumas had also filed a motion for relief from judgment with the trial court pursuant to Ohio Civil Rule 60(B)(5). (R. 30-2, PageID# 1307-1348, Exh. 57). The State opposed the motion as a second untimely petition for post-conviction relief. (R. 30-2, PageID# 1349-1362, Exh. 58). On July 6, 2015 the trial court denied Dumas's motion. (R. 30-2, PageID# 1363, Exh. 59).

On September 9, 2015, Dumas filed a notice of appeal with the state appellate court ostensibly challenging the trial court's denial of Rule 60(B)(5) motion, though he attached a July 20, 2015 motion where the court denied a motion for recusal as moot. (R. 30-2, PageID# 1372, Exh. 61). On the same day, Dumas also filed a motion for leave to file delayed appeal. (R. 30-2, PageID# 1378- 1380, Exh. 62).

On September 25, 2015, the state appellate court interpreted Dumas as appealing the denial of a motion for recusal, and determined that the denial of such a motion was not an appealable order and dismissed the appeal. (R. 30-2, PageID# 1380, Exh. 63).

Dumas did not appeal to the Ohio Supreme Court.

### E.  Federal Habeas Petition

On July 25, 2016, Dumas filed a Petition for Writ of Habeas Corpus. After several amendments, Petitioner raises the following grounds for relief:

GROUND ONE: The decisions of *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Pointer v. Tex.*, 380 U.S. 400, 403 (1965); *Diaz v. U.S.*, 223 U.S. 442, 454-55 (1912); *U.S. v. Alikpo*, 944 F.2d 206, 208-09 (5th Cir. 1991); *U.S. v. Ward*, 598 F.3d 1054, 1057-60 (8th Cir. 2010) – as well as the Sixth Amendment Confrontation Clause, and Fourteenth Amendment Due Process Clause – applies retroactively to my case.

GROUND TWO: The decision of *State v. Irbey*, 6th Dist. No. L-10-1139, 2011-Ohio-2079 applies retroactively to Petitioner's case.

GROUND THREE: The decisions of *Klopfer v. State of N.C.*, U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *Strunk v. U.S.*, 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); and *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), applies retroactively to my case.

GROUND FOUR: Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the U.S. Constitution. Petitioner can establish the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

GROUND FIVE: There was insufficient evidence to convict someone of murder and aggravated robbery who was not at the scene of the crime. There is no testimony that places Petitioner at the scene. Trial counsel's Rule 29 motion should have been granted.

GROUND SIX: Both trial counsel and appellate counsel failed to raise speedy trial issue, and provided ineffective assistance in the process.

[GROUND SEVEN]: Detective Daryl Martin violated Appellant's 14th Amendment substantial and procedural due process and equal protection right when he coached, tutored, and coersed (sic) Thomas' statements on video dated 4-14-11.

[GROUND EIGHT]: The state of Ohio's Prosecutorial Misconduct violated Appellant's 14th Amendment Procedural Due Process and Equal Protection rights, and 6th Amendment to a fair trial when the state of Ohio: 1). Breached its contract plea agreement with the state's witness; 2). Withheld impeachment material and *Brady* material from Appellant; 3). knowingly committed perjury under oath; and 4). knowingly and deliberately suborned perjury and tampered with a state's witness.

[GROUND NINE]: Trial counsel violated Appellant's 6th Amendment right to effective assistance of counsel and to a fair trial when he had: l). Allowed Appellant to go to trial unprepared; 2). had knowingly allowed for Petitioner's codefendant to falsely testify while being suborned in his perjury by the state of

13

Ohio, and failed to correct their perjury; and 3). Withheld exculpatory and impeachment video and photo array evidence favorable to the Appellant that would have made the outcome of his trial different.

[GROUND TEN]: There was insufficient evidence to justify a conviction on count one, Murder, count two, Aggravated Robbery, and Firearm Specifications ran concurrent; in violation of Appellant's 14th Amendment Due Process right.

(R. 11 & 22, PageID# 50-61, 82-83).

### III. Exhaustion and Procedural Default

#### A.   Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot:   "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

#### B.   Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v.*

*Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent asserts that all ten of Petitioner's grounds for relief have been procedurally defaulted due to Petitioner's alleged failure to present them to all levels of the Ohio courts. (R. 30, PageID# 710-715). Specifically, Respondent argues that Petitioner's grounds for relief were either not raised before the Supreme Court of Ohio or not timely raised before it. *Id.*

**1. Grounds One through Six**

Respondent asserts that the first six grounds for habeas relief essentially reiterate the six grounds for relief raised on direct appeal by Petitioner's appellate counsel and in the *pro se* supplemental filing. (R. 30, PageID# 711). The court agrees.[3] Nonetheless, Respondent contends

---

[3] (1) Ground one argues Petitioner was deprived of his right to be present at trial, an argument raised by appellate counsel as the first assignment of error on direct appeal; (2) ground two argues the trial courted erred by failing to merge his convictions and sentences as allied offenses of similar import, an argument raised by appellate counsel as the second assignment of error on direct appeal; (3) ground three argues Petitioner's right to a speedy trial was violated, his first argument as raised in his *pro se* supplemental filing on direct appeal; (4) ground four argues trial

these six grounds for relief are defaulted as the merits of these claims were never presented before the Supreme Court of Ohio.

The applicable rules of Practice of the Supreme Court of Ohio, effective January 1, 2013, require appeals to be perfected within 45 days in order to be considered timely. *See* Ohio S. Ct. Prac. R. 7.01(A)(1) ("the appellant shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed. The date the court of appeals filed its judgment entry for journalization with its clerk, in accordance with App.R. 22, shall be considered the date of entry of the judgment being appealed.")[4] The state appellate court's decision is dated June 29, 2015. (R. 30-1, PageID# 1043, Exh. 36). Therefore, August 13, 2015, was the last day Petitioner could have filed a timely appeal with the Ohio Supreme Court. However, Petitioner filed a motion for reconsideration with the state appellate court on July 13, 2015 — fourteen (14) days after the state appellate court's decision. (R. 30-1, Exh. 37). According to the same Ohio Supreme Court practice rule, "[w]hen a party *timely* files an application for reconsideration in the court of appeals pursuant to App.R. 26(A)(1), the time for filing a notice of appeal from the court of appeals' entry of judgment shall be tolled." Ohio S. Ct. Prac. R. 7.01(A)(5)(a) (emphasis added). The application for reconsideration was arguably timely, as such an application "shall be made in writing no later than ten days after the clerk has

---

counsel was unprepared and ineffective, an argument raised by appellate counsel as the third assignment of error on direct appeal; (5) ground five of the petition argues that Petitioner's convictions were not supported by substantial evidence, his second argument as raised in his *pro se* supplemental filing on direct appeal; and, (6) ground six argues that both trial counsel and appellate counsel were ineffective for failing to raise the speedy trial issue, Petitioner's third supplemental assignment of error on direct appeal. (R. 1; R. 30-1, Exhs. 26, 31).

[4] Ohio S. Ct. Prac. R. 7.01 was amended on January 1, 2017, but did not alter the provisions quoted.

both mailed to the parties the judgment or order in question and made a note on the docket of the mailing…" Ohio App. R. 26(A)(1). The state court docket reflects that copies of the June 29, 2015 journal entry and opinion were issued and mailed to the parties on July 1, 2015. (R. 30-2, PageID# 1408, Exh. 65). Therefore, an application filed by July 11, 2015 would have been timely, but that date fell on a Saturday. Pursuant to Ohio App. R. 14(A), "the day of the act, event or default from which the designated period of time begins to run shall not be included," but "[t]he last day of the period so computed shall be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday or a legal holiday." The application appears to have been timely filed and, notably, the state appellate court's decision did not deny the application for reconsideration on the grounds that it was untimely, but rather on the grounds that there was no error in the court's original opinion. (R. 30-1, PageID# 1082, Exh. 40).

Nevertheless, where an appellant, such as Dumas, seeks to file an appeal outside of the 45-day time period due to the tolling provision of Ohio S. Ct. Prac. R. 7.01(A)(5)(a), special filing requirements must be followed:

> (b)   If a timely application for reconsideration is filed in the court of appeals, and the appellant seeks to appeal from the court of appeals' entry of judgment, the appellant shall file a notice of appeal within forty-five days of the court of appeals' decision denying the application for reconsideration, or if reconsideration is granted, from the subsequent entry of judgment.
>
> (c)   To file an appeal from the court of appeals' opinion and judgment entry after the court of appeals has ruled on an application for reconsideration, the appellant shall comply with the time frame imposed by S.Ct.Prac.R. 7.01(A)(5)(b) and *shall include both of the following*:
>
> > (i)   A notice of appeal that complies with the requirements of S.Ct.Prac.R. 7.01(B) and that indicates the date of the filing of the application for reconsideration, the date of the court of appeals' decision on the application for reconsideration, and the date of the court of appeals'

19

> opinion and judgment entry that is being appealed;
>
> (ii)   A memorandum in support of jurisdiction that complies with the requirements of S.Ct.Prac.R. 7.02[5] and that also has attached a date-stamped copy of the court of appeals' decision denying the application for reconsideration, or if reconsideration is granted, the subsequent entry of judgment.

Ohio S. Ct. Prac. R. 7.01(A)(5)(b) & (c) (emphasis added).

On September 10, 2015, Petitioner filed a motion for leave to file a delayed appeal with the Supreme Court of Ohio, pursuant to Ohio S. Ct. Prac R. 7.01, despite the fact that his appeal was likely timely due to the aforementioned tolling provision. Nonetheless, even assuming the appeal was timely, Dumas failed to comply with the Ohio Supreme Court's filing requirements because he: (1) did not file a memorandum in support of jurisdiction that complied with Ohio S. Ct. Prac. R. 7.01(A)(5)(b) & (c) and Ohio S. Ct. Prac. R. 7.02(C); and (2) failed to alert the Court that an application for reconsideration was filed or to the date of the state appellate court's decision on the application for reconsideration.

The court has thoroughly reviewed Petitioner's Notice of Appeal (R. 30-1, PageID# 1083-1084) and Motion for Leave to File Delayed Appeal. (R. 30-1, PageID# 1085-1087, Exh. 42). Neither the Notice of Appeal nor the Motion for Leave to File a Delayed Appeal sets forth the propositions of law Dumas intended to raise. *Id*. Succinctly put, Petitioner failed to comply with an applicable state rule of the Ohio Supreme Court. That failure effectively deprived the Ohio Supreme Court of an opportunity to address the merits of Petitioner's claims, because they

---

[5] Ohio S. Ct. Prac. R. 7.02(C) requires the memorandum in support to set forth "propositions of law," "[a] thorough explanation of why a substantial constitutional question is involved, why the case is of public or great general interest, or, in a felony case, why leave to appeal should be granted," and finally "[a] brief and concise argument in support of each proposition of law." In more common parlance, the memorandum in support of jurisdiction must actually identify the alleged errors of law and set forth argument in support.

were never put before that court in a posture in which it could address them. As such,

Petitioner's first six grounds for relief are unexhausted and procedurally defaulted.

This court's finding is supported by a decision from the Southern District of Ohio with

nearly identical facts:

> The Warden asserts that Combs' First, Second, and Third Grounds for Relief are procedurally defaulted by his failure to file a timely notice of appeal to the Ohio Supreme Court from the affirmance of his conviction by the First District. The Court finds this claim is without merit. A person whose conviction is affirmed by the Ohio Court of Appeals has forty-five days to appeal to the Supreme Court of Ohio. S.Ct. Prac. R. 7.01(A)(1).
>
> However, S.Ct. Prac. R. 7.01(A)(5) provides that if a timely motion for reconsideration is filed in the court of appeals, the time for appeal to the Ohio Supreme Court is tolled until that motion is decided and then begins to run. In this case, the First District denied the motion for reconsideration on August 27, 2013. Forty-five days later is October 11, 2013. Therefore Combs' notice of appeal was not untimely. However, Combs did procedurally default in his appeal to the Ohio Supreme Court by failing to file the required memorandum in support of jurisdiction in compliance with S.Ct. Prac. R. 7.02. As can be seen from the record, Combs filed only a bare bones notice of appeal with no statement of the issues to be raised. Accordingly, Grounds One, Two, and Three are procedurally defaulted by failing to raise them as issues before the Supreme Court.

*Combs v. Cook*, No. 1:14-CV-088, 2015 WL 507489, at *4 (S.D. Ohio Feb. 6, 2015), *report and*

*recommendation adopted*, 2015 WL 3447782 (S.D. Ohio May 26, 2015);[6] *Yoder v. Tibbals*, No.

---

[6] The district court's decision in *Combs* is consistent with the Supreme Court's position that claims must be presented not only in a timely manner, but also in a manner that allows the state courts to address them:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of

5:13cv118, 2014 WL 3789051 at *6 (N.D. Ohio July 31, 2014) (finding claims procedurally defaulted where petitioner failed to set forth any propositions of law before the Ohio Supreme Court); *cf. Nelms v. Warden, N. Cent. Corr. Complex*, No. 2:16-CV-0160, 2017 WL 2805092 at *2 (S.D. Ohio June 29, 2017) (enforcing a procedural default where petitioner failed to comply with S. Ct. Prac. R. 7.02(D)(1) requiring a date-stamped copy of the judgment entry being challenged to be attached) (citations omitted).

Second, nowhere did Petitioner notify the Supreme Court of Ohio that he had filed an application for reconsideration or set forth the date of the state appellate court's decision denying said application. As such, Petitioner failed to alert the Court that his appeal may have been subject to tolling, potentially negating the need to set forth cause for his delay. The Supreme Court of Ohio proceeded to deny the motion for delayed appeal and dismissed the action. (R. 30-1, PageID# 1113, Exh. 43). "The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition." *Lung v.*

---

the federal exhaustion rule." *Id.*, at 848, 119 S.Ct. 1728 (quoting id., at 853, 119 S.Ct. 1728 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 119 S.Ct. 1728. ***Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it***. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 119 S.Ct. 1728 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards v. Carpenter*, 529 U.S. 446, 452–53, 120 S. Ct. 1587, 1592, 146 L. Ed. 2d 518 (2000) (emphasis added).

*Chillicothe Corr. Inst.*, No. 1:14-CV-149, 2015 WL 4778832, at \*4–5 (S.D. Ohio Aug. 13, 2015), *report and recommendation adopted*, 2015 WL 7076481 (S.D. Ohio Nov. 13, 2015) (citing *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)) (*per curiam*); *see also Baker v. Bradshaw*, 495 Fed. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* for the proposition that "[t]his court has held that violation of ... the timeliness requirements for an appeal to the Ohio Supreme Court ... constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"), *cert. denied*, 133 S.Ct. 2391 (2013); *Depinet v. Bunting*, No. 3:14CV1366, 2015 WL 5675076, at \*6 (N.D. Ohio Sept. 25, 2015) ("where the delayed appeal is not allowed, the Sixth Circuit Court of Appeals has held that even an unexplained decision [by the Ohio Supreme Court] denying leave to file an untimely appeal is presumed to enforce any applicable procedural bar").

Petitioner has failed to present his first six grounds for relief to the Supreme Court of Ohio and those grounds for relief are defaulted unless, as discussed below, Petitioner can demonstrate both cause or prejudice or, alternatively, a credible claim of actual innocence.

### 2. Grounds Seven through Ten

Respondent also argues that grounds seven through ten were never fairly presented to the Supreme Court of Ohio and are defaulted, because Petitioner could no longer raise them in a delayed appeal. The substance of grounds seven through ten in the habeas petition were first raised in Petitioner's appeal of the denial of his second post-conviction petition in state court. (R. 30-1, PageID# 1203-1204, Exh. 53). Respondent argues that Petitioner defaulted by failing to file an appeal with the Supreme Court of Ohio from the denial of his post-conviction petition. (R. 30, PageID# 712). Respondent is incorrect. Petitioner filed an appeal with the Supreme Court of Ohio on April 6, 2017, a few days before Respondent filed the return of Writ. (Case No. 2017-

0467). Furthermore, the appeal was filed within 45 days of the state appellate court's decision dated February 24, 2017. Nevertheless, the state appellate court, the last court to offer a reasoned opinion, found that "the trial court correctly determined that Appellant's petition was untimely and was not excused pursuant to R.C. 2953.23(A)(1)(a)–(b)." *State v. Dumas*, 2017-Ohio-731 at ¶15, 2017 WL 823769 (Ohio Ct. App., Feb. 24, 2017).

The *Maupin* test is satisfied here, as Petitioner failed to comply with O.R.C. § 2953.23's filing requirements, an applicable state procedural rule governing second or successive post-conviction petitions, and both the trial court and state appellate court actually enforced the state procedural sanction. The procedural bar is also an independent and adequate state ground that can foreclose federal review as it is firmly established and regularly followed, as thoroughly explained by another habeas decision:

> The Court also finds that Ohio's postconviction rules, and specifically the rules imposing a limitations period and those imposing stringent conditions on the filing of untimely and/or successive petitions, are adequate and independent. The statutory provisions at issue, i.e., R.C. §§ 2953.21 through 2953.23, are stated in clear and unmistakable terms. Since they became effective on September 21, 1995, they have been consistently enforced by the state courts. *See, e.g., State v. Byrd*, 145 Ohio App. 3d 318, 762 N.E.2d 1043 (Ohio App. 1 Dist. 2001); *State v. Garner*, 2000 Ohio App. LEXIS 1823, No. C-990659, 2000 WL 492074 (Ohio App. 1 Dist. Apr. 28, 2000); *State v. Beuke*, 130 Ohio App. 3d 633, 720 N.E.2d 962 (Ohio App. 1 Dist. 1998). Further, there is an emerging body of case law attempting to clarify the circumstances under which jurisdiction will lie for an untimely or successive postconviction action. *See, e.g., State v. Byrd*, 145 Ohio App. 3d 318, 762 N.E.2d 1043 (Ohio App. 1 Dist. 2001); *State v. Beuke*, 130 Ohio App. 3d 633, 720 N.E.2d 962 (Ohio App. 1 Dist. 1998). The limitations set forth in R.C. 2953.23(A) further important state interests in finality of criminal judgments and efficient use of judicial resources. Finally, R.C. 2953.23(A) does not rely on or otherwise implicate federal law.

*Hill v. Mitchell,* 2006 WL 2807017 (S.D. Ohio Sept. 25, 2006) (collecting cases); *see also Davie v. Mitchell*, 547 F.3d 297, 313 (6th Cir. 2008) (finding the petitioner violated an independent and adequate state procedural rule thereby procedurally defaulting his claim when he failed to meet

the requirements of O.R.C. § 2953.23); *Sheppard v. Bagley*, 604 F. Supp. 2d 1003, 1107 (S.D.

Ohio June 1, 2004) (finding O.R.C. § 2953.23(A) "remains an independent and adequate state

procedural rule, satisfying the third *Maupin* requirement).

Finally, even though the Supreme Court of Ohio did not specify why it was denying

Petitioner's appeal, federal habeas courts "will not assume that the [state] court did not observe

the applicable procedural bar. Instead, we will assume that had the state court addressed

petitioner's due process claim, it would not have ignored its own procedural rules and would

have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996);

*accord Hayes v. Warden, Franklin Med. Ctr. Zone B*, No. 1:12-CV-740, 2013 WL 3944443, at

*14 (S.D. Ohio July 31, 2013) (finding that where the Ohio Supreme Court was entirely silent as

to its reasons for denying an appeal, "it must be assumed that the state court enforced the

applicable procedural bar to review"), *report and recommendation adopted sub nom. Hayes v.*

*Warden, Franklin Med. Ctr. Zone*, 2013 WL 4761140 (S.D. Ohio Sept. 4, 2013).

Therefore, the court finds grounds seven through ten are procedurally defaulted

### 3. Grounds for Excusing Procedural Default

Neither Dumas's petition nor his traverse sets forth any cause or ensuing prejudice that

would allow this court to excuse the procedural default of any of his grounds for relief. As

explained by the Sixth Circuit Court of Appeals:

> The "cause" standard in procedural-default cases requires the petitioner to show
> that "some objective factor external to the defense impeded counsel's efforts" to
> raise a claim in the state courts. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct.
> 1454, 113 L.Ed.2d 517 (1991) (internal quotation marks omitted). Such factors
> may include interference by officials, an attorney error rising to the level of
> ineffective assistance of counsel, or a showing of a factual or legal basis for a
> claim that was not reasonably available. *Id*. at 493-94. "[A] procedurally defaulted
> ineffective-assistance-of-counsel claim can serve as cause to excuse the
> procedural default of another habeas claim only if the habeas petitioner can satisfy

the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012).

Therefore, to the extent Petitioner would argue that alleged ineffective assistance of counsel should excuse his default, he must show cause for excusing his ineffective assistance of counsel claims before they can be used a basis for excusing his other claims. Petitioner has failed to do so. To the extent Petitioner would argue that he should be excused from strict compliance with Ohio's procedural rules and that his *pro se* status should serve as cause to excuse his default, such arguments have been routinely rejected. The Sixth Circuit Court of Appeals has found that a petitioner's *pro se* status in state court proceedings or general ignorance of the law is insufficient to establish the requisite cause to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (finding petitioner's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default); *accord Sabo v. Warden*, No. 2:16-cv-536, 2017 WL 56035 at *2 (S.D. Ohio Jan. 5, 2017); *Buchanan v. Bunting*, No. 5:14-cv-01656, 2015 WL 12803743 at *10 (N.D. Ohio Sept. 8, 2015) (White, M.J.), *report and recommendation adopted*, 2016 WL 6995343 (N.D. Ohio Nov. 30, 2016) (Lioi, J.); *Arnold v. Warden, Lebanon Correctional Inst.*, 832 F. Supp. 2d 853, 859 (S.D. Ohio 2011); *Tolliver v. Sheets*, 530 F. Supp. 2d 957, 981 (S.D. Ohio 2009). Therefore, Petitioner's *pro se* status or ignorance of the Ohio Supreme Court's Rules of Practice or the Ohio Revised Code cannot serve as cause to excuse the procedural default of his habeas claims. Because Dumas has failed to demonstrate cause, the issue of prejudice is moot.

Finally, a petitioner's procedural default can also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *Coleman*, 501 U.S. 722 at 749-50, 111 S. Ct.

2546, 115 L. Ed. 2d 640. Petitioner has not presented this court with any new and reliable

evidence (*i.e.* exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence that was not presented at trial) that could satisfy the aforementioned *Schlup*

standard. To the extent Petitioner merely continues to maintain that he was not physically present

at the time the crimes occurred, such an assertion is irrelevant as he was convicted as an

accomplice. Further, there is nothing new with respect to this assertion.

### IV. Conclusion

For the foregoing reasons, it is recommended that Dumas's Petition be DISMISSED as

procedurally defaulted.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE


Date: May 14, 2018



### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters***, 638 F.2d 947 (6**th** Cir. 1981);** *Thomas v. Arn***, 474 U.S. 140 (1985),** *reh'g denied***, 474 U.S. 1111 (1986).**